■ MIDLAND CONTAINER CORPORATION, Respondent, v SOPHIA REALTY CORPORATION et al., Appellants.—In an action, *inter alia,* for specific performance of an option to purchase real property, the defendants appeal from an order of the Supreme Court, Queens County, dated August 16, 1978, which denied their motion, *inter alia,* to dismiss the complaint based upon documentary evidence (see CPLR 3211, subd [a], par 1). Order reversed, on the law, with $50 costs and disbursements, and defendants' motion to dismiss complaint granted. On December 13, 1972 the plaintiff entered into a 12-year commercial lease with defendant Sophia Realty Corporation. The lease provided, *inter alia,* that after January 1, 1975, rent on the premises would be $48,000 per year until the end of the lease term, December 31, 1984. Furthermore, paragraph "THIRTY-EIGHTH" of the lease (denominated the plaintiff's right of "first refusal") provided that "If the Lessor shall have the opportunity to sell the demised premises * * * Lessor shall give Lessee Fifteen (15) days notice in writing of such proposed sale and the * * * Lessee shall have the first option to purchase the demised premises * * * at the same price and on the same terms". The defendant corporation consisted of only two shareholders, each owning 50% of the shares of outstanding stock. On January 2, 1975 the shareholders resolved, at a meeting of the board of directors, to dissolve the corporation, liquidate the corporate assets and, after payment of liabilities, distribute those assets equally amongst themselves. They agreed to acquire title to those assets not in their individual names, but rather in the form of a partnership. This partnership, defendant Sophia Realty Associates, had been formed the day before for the sole purpose of taking title to the assets of the soon-to-be dissolved corporation and administering them. On January 10, 1975 a deed transferring the leased premises from the defendant corporation to the defendant partnership was recorded in the Queens County Register's office. Accompanying the deed, the defendants filed a New York City real property transfer tax return indicating that the "consideration" paid to the corporation was the partnership's assumptions of corporate liabilities to the extent of $138,809. New York State transfer taxes were also paid. It is undisputed that the fair market value of the leased premises is assessed at $355,000. Notice of the change in record title from the corporation to the partnership was also given to the plaintiff at this time. In March, 1978 the plaintiff commenced the instant action for, *inter alia,* specific performance of the option clause of the lease, i.e., paragraph "THIRTY-EIGHTH". Plaintiff's theory is essentially that the conveyance of the leased premises from the corporation to the partnership constituted a "sale" within the meaning of the right of "first refusal" clause sufficient to trigger the option. Since the corporation allegedly "sold" the leased premises to the partnership for the consideration

stated in the transfer tax form (i.e., § 138,809), the plaintiff sought a judgment demanding the right to exercise its option to buy the leased premises first at the same price, notwithstanding the fact that this was only 39% of the fair market value. Defendants moved, *inter alia,* to dismiss the complaint based upon documentary evidence (see CPLR 3211, subd [a], par 1). Special Term denied the motion with leave to renew after plaintiff has had an opportunity to obtain disclosure from defendants. Aggrieved, the defendants appeal from that order. We hold that, as a matter of law, the transaction between the defendant corporation and defendant partnership was not a "sale" which would trigger the plaintiff's option. Accordingly, the order must be reversed and the complaint dismissed. Section 1005 of the Business Corporation Law allows a corporation in the process of a nonjudicial dissolution two separate courses of action with respect to the disposition of corporate assets after payment of corporate liabilities: (1) the corporation "may sell its remaining assets" to third parties and distribute the consideration to the shareholders in return for the surrender of outstanding shares of stock (Business Corporation Law, § 1005, subd [a], par [3], subpar [A]); (2) the corporation, "whether or not it has made a sale under subparagraph (A), may distribute any remaining assets, in cash or in kind or partly each, among its shareholders" for surrender of the stock (Business Corporation Law, § 1005, subd [a], par [3], subpar [B]). The foregoing language unequivocally evinces an intent that the outright distribution of remaining corporate assets to the shareholders themselves is not legally synonymous with a "sale" of those same assets to third parties. Thus, as a matter of law, distribution of the assets of a corporation in the process of a nonjudicial dissolution to the shareholders can never trigger an option clause based on a "sale" (cf. *Halsted v Globe Ind. Co.,* 258 NY 176, 180). The record unequivocally establishes that only a distribution has occurred here. The fact that the shareholders have acquired title to the distributed assets in the form of a partnership is irrelevant, inasmuch as the assets themselves would have had to (implicitly) pass into the shareholders' hands *before* they could be turned over to a partnership. That is to say, one can never transfer assets to a partnership unless he actually owned them in the first place. We note further that plaintiff's causes of actions are not favored in equity. Not only is the plaintiff seeking to circumvent its contractual obligation of paying $48,000 rent annually, but it demands that the defendants be compelled to sell their property at a price admitted to be 39% of the fair market value. To accept the plaintiff's theory would not only be a triumph of form over substance, it would also serve to construe the lease in a manner calculated to " 'give one of the parties an unfair or unreasonable advantage over the other' " (see *Matter of Friedman,* 64 AD2d 70, 82, citing *Rush v Rush,* 19 AD2d 846). Hopkins, J. P., Damiani, Rabin and Shapiro, JJ., concur.